**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 53344**

| | | |
|---|---|---|
| MEGAN ROSS nka MEGAN MILLER, | ) | |
| | ) | **Filed: February 4, 2026** |
| Petitioner-Appellant, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| CASEY ROSS, | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| Respondent-Respondent. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Andrew Robert Woolf, Magistrate.

Amended judgment re: custody, visitation, and child support, <u>affirmed</u>.

Beard St. Clair Gaffney, PA; Kristopher D. Meek, Idaho Falls, for appellant.

Smith Woolf Anderson & Wilkinson, PLLC; Marty R. Anderson, Idaho Falls, for respondent.

---

HUSKEY, Judge

Megan Miller (Miller) appeals from the judgment re: custody, visitation, and child support and the amended judgment re: custody, visitation, and child support. Miller argues the magistrate court did not consider essential facts affecting the best interests of the parties' two minor children (Children) when it created the custody schedule, and the ignored facts do not support the conclusion that the schedule is in the best interests of Children. Miller also argues the magistrate court abused its discretion by failing to tailor a custody order that is in the best interests of Children. Casey Ross (Ross) argues the magistrate court did not err. We hold the magistrate court did not abuse its discretion in modifying the custody schedule. The amended judgment re: custody, visitation, and child support is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Miller and Ross divorced in 2022. The judgment and decree of divorce granted the parties joint custody of Children. Miller was awarded primary physical custody of Children subject to Ross's custodial time as agreed upon by Miller and Ross.

In 2023, Miller filed a petition to modify the custody schedule. Miller argued there had been substantial and material changes in circumstances that justified a modification as to custody. Miller asserted that the material changes in circumstances were: (1) Ross did not consistently utilize the Thursday overnight and did not provide notice of when he intended to do so; (2) Miller moved across town; (3) Children would be in a new school and would no longer have Fridays off but instead would have alternating Mondays off; (4) Ross did not help Children complete their homework during his custodial time; and (5) because of Ross's nightly work schedule, he slept until noon, leaving Children unattended. Miller proposed modifying Ross's custodial time to alternating Fridays after school until Monday at 5:00 p.m., so long as his work schedule could be adjusted to accommodate the schedule. If Ross could not or would not adjust his work schedule, Miller proposed his custodial time should be from Friday after school until Sunday at 11:00 a.m.

Ross filed a response and counterclaim, arguing that there had been no material, substantial, and permanent change of circumstances that would justify reducing his parenting time. However, Ross agreed that Miller's unilateral decision to move and change Children's school was a material, substantial, and permanent change, but because the new school was closer to Ross's home, additional overnight visits would be more convenient for Ross and Children. As a result of the change, Ross proposed a modification to his custodial time as follows: (1) every Tuesday after school or at 9:00 a.m., depending on both parties' work schedules, through Wednesday at 5:00 p.m.; (2) every Thursday after school or at 9:00 a.m. through Friday at 5:00 p.m.; and (3) alternating weekends from Friday after school releases, or at 9:00 a.m., to Sunday at 5:00 p.m. Ross also provided suggestions for holidays and extended vacations, which are not at issue in this appeal. Later, Ross modified his request to propose that Miller and Ross should each have Children fifty percent of the time with a week on/week off alternating schedule. The matter proceeded to trial, where both parties and their new significant others testified.

The magistrate court held a separate hearing in which it orally issued its purported findings of fact and conclusions of law on the record. The magistrate court summarized the testimony of

each witness and concluded there had been substantial and material changes since the last custody order. The magistrate court concluded, "in this Court's view, the current visitation schedule is just not working, really, for either party, given these substantial and material changes." The magistrate court then modified the schedule to shared physical custody with a year-round, week on/week off alternating schedule. Miller filed a motion to reconsider arguing that Ross should not have equal physical custody because he worked overnights during his custodial time, and he did not meet his burden of proof in demonstrating that Miller's time should be significantly reduced. The magistrate court denied the motion to reconsider. Miller filed a permissive appeal from both the judgment modifying custody and the denial of the motion to reconsider; the permissive appeal was granted.

On appeal, this Court reversed the magistrate court's order, finding it had not entered clear findings of fact and remanded the case for additional proceedings. On remand, the magistrate court entered findings of fact and re-entered the same custody and visitation schedule and child support judgment. Miller appeals.

## II.

## STANDARD OF REVIEW

In a permissive appeal under Idaho Appellate Rule 12.1, the Court reviews the magistrate court's decision without the benefit of a district court appellate decision. *Lamont v. Lamont*, 158 Idaho 353, 356, 347 P.3d 645, 648 (2015). Decisions regarding child custody are committed to the sound discretion of the magistrate court, and the magistrate court's decision may be overturned on appeal only for an abuse of discretion. *Id.*; *see also McGriff v. McGriff*, 140 Idaho 642, 645, 99 P.3d 111, 114 (2004); *Moye v. Moye*, 102 Idaho 170, 171, 627 P.2d 799, 800 (1981). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.

## ANALYSIS

Miller argues the magistrate court abused its discretion when it entered the amended judgment modifying custody. First, Miller argues the magistrate court's findings and analysis do

3

not support its decision that it is in Children's best interests to modify the custody schedule. Miller's primary complaint is that because the magistrate court ordered a week on/week off schedule, and because of Ross's work schedule, during the time Children are with Ross they will be "without the care of a parent." Miller asserts that in entering a week on/week off schedule, the magistrate court prioritized the care of Children by a non-parent (Ross's girlfriend) over Miller. Second, Miller argues there was no basis for such a significant change to the custody order, given that the only reason provided by the magistrate court to change the schedule was Children's time with Ross on Thursday evenings was not consistently occurring for different reasons. Finally, Miller argues that although she initiated the change in the custody schedule, because Ross ultimately asked for a week on/week off schedule, it was Ross's burden to establish the factual basis justifying the modification to the custody order. Ross responds that the magistrate court did not abuse its discretion because it considered all the relevant factors before making a decision.

"The burden rests with the party seeking to have custody modified to show that there has been a material, permanent and substantial change in the circumstances of the parties which warrants modification for the best interest[s] of the child." *Strain v. Strain*, 95 Idaho 904, 905-06, 523 P.2d 36, 37-38 (1974). The question of whether a material, permanent, and substantial change in conditions exists is a preliminary question to what changes in the custody order would be in the best interests of the children. *Doe v. Doe*, 161 Idaho 67, 72, 383 P.3d 1237, 1242 (2016). The Idaho Supreme Court has made it clear that whether a change in conditions is material or substantial depends upon the impact of the change on the children. *Id.* at 73, 383 P.3d at 1243. Accordingly, the modification analysis involves an interconnected consideration of material and substantial changes *and* the consideration of the best interests of the children. *Id.* This Court has explained that the best interests of the children must take precedence in any analysis regarding a material change in circumstances. *McGriff*, 140 Idaho at 647, 99 P.3d at 116.

In this case, neither party disputes the magistrate court's finding that there are substantial, material, and permanent changes in circumstances. Rather, Miller disagrees that the changed circumstances warranted a modification in the custody schedule. Despite being the party that filed the initial motion to modify custody, which would have significantly reduced Ross's custodial time with Children, Miller now argues the changes in circumstances warranted only a minor change to the already workable custody schedule, i.e., removing Ross's Thursday night visitation. Ross argues that Miller misunderstands the narrow scope of the remand, fails to identify

4

deficiencies in the magistrate court's expanded factual determinations, and instead, attempts to reargue trial testimony and challenge factual determinations that were already upheld as supported by substantial evidence. Ross also argues that Miller only asserts the magistrate court should have given more weight to her view of the evidence. In reply, Miller argues the magistrate court primarily relied upon the inconsistent Thursday night visitation and interpersonal conflict as justifications to change the schedule without analyzing the impact of Ross's absences during the evenings when he works, and thus, failed to connect the substantial and material changes to a schedule that is in the best interests of Children. Miller also argues the magistrate court failed to explain how Ross's girlfriend would assist Children if an emergency, or some other difficult event, were to occur during Ross's absence.

In determining custody, whether in the initial divorce decree or a subsequent modification, the welfare and best interests of the children are of paramount importance. *Silva v. Silva*, 142 Idaho 900, 904, 136 P.3d 371, 375 (Ct. App. 2006); *Roeh v. Roeh*, 113 Idaho 557, 558, 746 P.2d 1016, 1017 (Ct. App. 1987). The controlling statute governing the best interests of the children, Idaho Code § 32-717, provides a non-exhaustive list of factors for the trial court to consider in making this determination. *Silva*, 142 Idaho at 904, 136 P.3d at 375. Included in the list are the wishes of the children's parents; the wishes of the children; the interaction and interrelationship of the children with the parents and siblings; the children's adjustment to his or her home, school, and community; the character and circumstances of all the individuals involved; the need to promote continuity and stability in the life of the children; and domestic violence, whether or not in the presence of the children. I.C. § 32-717(1)(a)-(g). Although the trial court shall consider all relevant factors, it must avoid considering irrelevant factors and avoid assigning too much weight to any particular factor. *Silva*, 142 Idaho at 904, 136 P.3d at 375.

In making custody determinations, the trial court must thoroughly explore the ramifications, vis-à-vis the best interests of the children, of any change which is evident. *Doe*, 161 Idaho at 73, 383 P.3d at 1243. This Court has held that the best interests analysis requires an inquiry into all the relevant circumstances that will affect those interests. *Silva*, 142 Idaho at 906, 136 P.3d at 377.

Following remand of this case, the magistrate court entered additional findings of fact regarding the reasons for the custody modification. The magistrate court cited to the material changes, including, "[t]he current visitation schedule is not working for either party, it causes the

5

children stress, and that schedule is not being followed." The magistrate court found, for example, that although Ross was granted Thursday evenings, the visits often did not occur for different reasons and the lack of consistent visitation was "hard on the kids." The magistrate court also found that Miller does not like Ross's girlfriend and Miller does not want the girlfriend around Children. The magistrate court noted that "the glaring problem here is [Miller] not wanting anything to do with [girlfriend]," which contributed to communication problems between Miller and Ross.

Ross's work schedule was discussed extensively during the trial. Following remand, the magistrate court made specific factual findings regarding Ross's work schedule. The magistrate court found Children do well when they are with Ross and specifically noted Ross's work schedule and that regardless of the work schedule, Ross is able to take Children to school; Ross "is a good dad and treats the kids well"; Children want to spend time with Ross; and Children have an appropriate relationship with Ross's girlfriend. Thus, we disagree with Miller that the magistrate court did not consider Ross's work schedule when determining the custody modification.

The magistrate court also adequately assessed the impact of Ross's work schedule on the best interests of Children. A similar factual scenario was addressed in *Silva*. In that case, this Court was asked to determine whether a parent's work schedule and resulting availability to care for a child is a relevant factor a court could consider when deciding child custody issues. *Silva*, 142 Idaho at 904, 136 P.3d at 375. The father in *Silva* worked twelve-hour night shifts from 6:00 p.m. to 6:00 a.m. *Id.* at 903, 136 P.3d at 374 Because of the father's work schedule, he was not available to be with the children when they woke up in the morning, during evenings, or when they woke up during the night. *Id.* As a result, the children were required to spend nearly half of their nights away from home while in their father's custody. *Id.* Moreover, even when the father was available during the day, his fatigue interfered with his ability to care for the children who entertained themselves while he slept. *Id.* This Court held that consideration of a parent's work schedule and need for third-party childcare is appropriate in a child custody determination *to the extent that such circumstances are shown to affect the well-being of the children. Id*. at 906, 136 P.3d at 377. We clarified this holding should not be interpreted to mean that a working parent or a parent with a nontraditional work schedule is a presumptively inferior choice. *Id.* Rather, we merely held that a parent's work schedule may be one factor among many that can assist a magistrate court in tailoring a custody schedule that will best promote the children's welfare. *Id.*

6

While the father's work schedule in *Silva* directly conflicted with his allotted parenting time, Ross's work schedule does not. The magistrate court found that Ross works Sunday, Monday, Wednesday, and Thursday from 7:30 p.m. to 3:00 a.m., and during December through March, Ross works Sunday, Monday, and Wednesday from 7:30 p.m. to 3:00 a.m. The magistrate court found that Ross gets home and goes to sleep at about 3:30 a.m. but gets up to take Children to school. While Ross is at work, Ross's girlfriend cares for Children. The magistrate court specifically found that Ross's girlfriend has an appropriate relationship with Children. There was no evidence presented that this arrangement creates confusion, instability, or risk for Children, nor has Miller presented any child-specific concerns arising from this arrangement. The magistrate court considered Ross's work schedule as one of several factors when it concluded that a modification of the custody schedule was warranted.

To the extent Miller believes Ross's work schedule should have been weighed differently, or that the magistrate court "assign[ed] too much weight to the factor of continuity and stability," such beliefs are insufficient to demonstrate an abuse of discretion. It is well established that appellate courts in Idaho do not reweigh evidence. *Neustadt v. Colafranceschi*, 167 Idaho 214, 227, 469 P.3d 1, 14 (2020).

Additionally, pursuant to *Silva*, a parent's work schedule and need for childcare is relevant only to the extent the work schedule and need for childcare are shown to affect the well-being of the children. Here, the magistrate court implicitly found that Ross's work schedule did not affect the best interests of Children. The magistrate court considered the work schedules of both Miller and Ross. It noted that based on Miller's work schedule, Children needed third-party care after school and sometimes that care was provided by Ross. The magistrate court noted that Children did well with both Miller and with Ross and Children are well-adjusted to both Miller's and Ross's homes. The magistrate court noted that even with Ross's work schedule, Ross was able to take Children to school during the school year. The magistrate court was well-aware of the work schedules of the parties but nonetheless ordered: "There is no right of first refusal. Each parent shall be responsible for arranging childcare during their custody time." A parent is not unavailable simply because the parent works. The magistrate court's decision reflects the reality that quite often, children are not cared for by either parent during a parent's custodial time. Many children spend time with childcare providers, relatives, and other trusted caregivers and adults during a parent's custodial time. Miller, herself, has third parties care for Children while Children are in

7

school and in after-school programs while Miller works.  As a result, the magistrate court looked at the totality of the circumstances, including the relationships Children have with Ross and Ross's girlfriend, and concluded that because Ross's work schedule did not affect the best interests of Children, that factor alone would not defeat a more equally shared custody schedule.

Regarding the best interests of Children, the magistrate court recognized its decision regarding child custody was discretionary and cited I.C. § 32-717 as setting forth the factors to consider.  The magistrate court outlined the relevant factors and explained how each factor related to the evidence.  The magistrate court then found it is in Children's best interests that the custody schedule be modified to shared physical custody with a year-round week on/week off alternating schedule.  Although Miller argues the magistrate court erred when it modified the custody order only because of the issue with the Thursday night visitation, that is not entirely accurate.  In its findings, the magistrate court noted that modifying the custody schedule would eliminate the Thursday night visitation problem and the Friday exchanges, which had become problematic once Children began attending school on Fridays, and would provide Children more stability with only one exchange per week.  The magistrate court further noted that the new schedule would reduce stress for the parties and Children, and reduce the number of exchanges and thus, the interactions between Miller and Ross and between Miller and Ross's girlfriend.  Although not specifically mentioned by the magistrate court, I.C. § 32-717(1)(e) provides that the character and circumstances of all individuals involved are relevant factors a court shall consider when evaluating the best interests of children.  This was a factor the magistrate court considered when it concluded that modifying the custody schedule was in the best interests of Children.

The magistrate court noted that reducing the number of interactions between Miller and Ross is in the best interests of Children because Miller and Ross did not communicate well and did not co-parent well together.  The magistrate court specifically noted that because of Miller's feelings towards Ross's girlfriend, limiting the potential interaction between them would reduce arguments and reduce or eliminate situations where Children observed discord between their parents.  The magistrate court concluded that limiting the interactions between Miller and Ross's girlfriend "is in the best interests of the children right now so the children are not subject to

8

situations like the situation at the hospital."[1]  The magistrate court noted arguments that occur between parents and/or their significant others in front of children is never good for the children.

Miller argues in her reply brief that the magistrate court did not adequately explain the connection between the substantial and material changes in circumstances and the magistrate court's conclusion that there needed to be improved continuity and stability.  We disagree.  As discussed above, the magistrate court connected the best interests of Children to a need for an alternating week on/week off custody schedule for a variety of reasons.  Thus, Miller has failed to show either a factual or legal error underlying the magistrate court's evaluation of Ross's work schedule.  As a result, the magistrate court did not abuse its discretion in modifying the custody schedule to an alternating week on/week off schedule.

Miller requests attorney fees on appeal pursuant to Idaho Rules of Family Law Procedure 901 and 902, I.A.R. 40 and 41, Idaho Rule of Civil Procedure 54, and I.C. §§ 12-120, -121.  Because Miller is not a prevailing party, she is not entitled to attorney fees or costs under any of the rules cited.  Ross seeks attorney fees on appeal pursuant to I.A.R. 41 and I.C. § 12-121.  Idaho Appellate Rule 41(a) requires that a "party seeking attorney fees on appeal must assert such a claim as an issue presented on appeal in the first appellate brief filed by such party as provided by Rules 35(a)(5) and 35(b)(5)."  Idaho Appellate Rule 35(b) relates to the respondent's brief.  If the respondent is seeking attorney fees on appeal, "the respondent must so indicate in the division of additional issues on appeal that respondent is claiming attorney fees and state the basis for the claim."  Ross's brief does not contain an issue statement, so he fails to comply with I.A.R. 35(b)(5), which precludes attorney fees pursuant to I.A.R. 41.

---

[1]  The magistrate court's reference to the "situation at the hospital" described a circumstance where one of the children had an injury that required examination at a hospital.  Ross testified that because it occurred during his custodial time, he texted Miller, told her he was taking the child to get checked, and then he and his girlfriend took the child to the hospital.  According to Ross, Miller informed Ross that he needed to tell his girlfriend to wait in the car; Ross refused.  As the child was getting weighed, Miller arrived, screamed at the girlfriend to leave, shoved the girlfriend, and told the girlfriend she was not allowed to be in the hospital with Miller's kids and that it was a HIPAA violation.

According to Miller, after Ross texted her that he was taking the child to the hospital, Miller arrived and "tapped" the girlfriend on the shoulder and asked her to leave.  Miller also testified that she told hospital staff it was a HIPAA violation to have the girlfriend attend the appointment, and the girlfriend was eventually asked to sit in the waiting room.

Under I.C. § 12-121, a court may award reasonable attorney fees to the prevailing party or parties when the court finds that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. *Severinsen v. Tueller*, 174 Idaho 669, 679, 559 P.3d 771, 781 (2024). As to I.C. § 12-121, we do not find the standard is met in this case and decline to award attorney fees on that basis. Costs on appeal are awarded to Ross as the prevailing party.

## IV.

## CONCLUSION

The magistrate court did not abuse its discretion when it modified the custody schedule. The magistrate court's amended judgment re: custody, visitation, and child support is affirmed. Neither party is awarded attorney fees on appeal. Costs on appeal are awarded to Ross.

Chief Judge TRIBE and Judge LORELLO, **CONCUR**.