IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 45029

LISA M. SEARLE nka LOOSLE,      )
            )      **Pocatello, September 2017 Term**
     **Plaintiff-Appellant,**      )
            )      **2017 Opinion No. 114**
**v.**              )
            )      **Filed: November 8, 2017**
**DUSTIN L. SEARLE,**      )
            )      **Karel A. Lehrman, Clerk**
     **Defendant-Respondent.**      )

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Scott H. Hansen, Magistrate Judge.

Magistrate order modifying child custody plan, <u>reversed</u> and <u>remanded</u>.

Hopkins Roden Crockett Hansen & Hoopes, PLLC., Idaho Falls, for appellant. Tracy W. Gorman argued.

Swafford Law, PC, Idaho Falls, for respondent. Larren Covert argued.

_____

BURDICK, Chief Justice.

This expedited, permissive appeal presents a child custody dispute. Lisa M. Searle, nka Lisa Loosle ("Mother") appeals the Bingham County magistrate judge's order which modified the current child custody plan outlined in the 2013 order between Mother and Dustin L. Searle ("Father"). Mother argues that the magistrate judge abused its discretion in determining there had been a substantial, material, and permanent change in circumstances warranting a change in custody. Mother also argues the magistrate judge abused its discretion when it determined it was in the best interests of Child to modify the existing custody agreement and give Father physical custody during the school year. We reverse the magistrate judge's change in custody.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father were married in 2005 and had one child ("Child") during the marriage. Mother and Father divorced in Bonneville County in 2007. Following the divorce, the parties entered into a child custody agreement that gave Mother custody of Child during the

school year, with Father having visitation on weekends and holidays. On August 23, 2012, the parties entered into a modified custody agreement that contemplated and allowed for Mother's potential relocation for her employment, and if Mother found employment outside of Idaho, she would be allowed to relocate to another state. The agreement indicated the parties would continue to adhere to the existing visitation schedule and transportation schedule even if Mother moved. Six days after the magistrate judge entered this agreement as a court order, Mother moved with Child to Virginia.

On October 5, 2012, Father filed a petition for modification based on Mother's move to Virginia. The magistrate judge created the "2013 Custody Order" which continued to give custody to Mother during school, and gave Father visitation during summers, spring break, fall break, and every other Christmas break. The 2013 Custody Order required Father to pay for his flight to Virginia to get Child, and Mother to pay for the return flight to bring Child back. At the time, the visitation schedule worked because Father was employed in the oil fields of North Dakota, while earning a substantial salary, so he could afford to fly for his visitation. From 2009 until May 2015, Father worked in North Dakota for three weeks out of the month. Starting in 2011, Father took summers off from work and spent summers in Shelley, Idaho, and worked the rest of the year in North Dakota.

In November of 2014, Mother became ill and moved back to the Boise area with Child. Mother consulted with Father before moving back to Boise, and Father consented to Mother's move. Mother and Father continued to follow the visitation plan in the 2013 Custody Order even after Child had returned to Idaho. Father testified that after Mother moved back to Idaho in 2014, they discussed changing his visitation to more than what was in the 2013 Custody Order. Mother was open to changing the agreement, but Father told Mother he wanted it to stay the same, as he did not want to give up any of his already-established visitation time. Mother testified that she asked Father if Mother could spend time with Child when Child was in Shelley, but that Father said no.

In May of 2015, Father stopped working in the oil fields. On May 21, 2015, Father filed a petition for modification, to reduce his child support, as he was earning significantly less than he had in the oil fields. Approximately one year later, on July 15, 2016, Father amended his petition for modification asking for a revision to visitation and custody time due to Child being back in Idaho.

On December 16, 2016, a trial was held on the issues raised in Father's amended petition for modification—the child support amount and custody agreement. At trial, Father argued that his income had decreased significantly and his support amount should be reduced. Father also indicated his new employment was seasonal and may lay him off, or give him full-time work, but he does not need the income from the job because he "can make a living working at McDonald's" and still be able to pay his bills. Mother testified that she is currently earning $45,000 per year working for the Caldwell School District as a school psychologist, but that she is almost finished completing her degree as an Education Specialist, and had been offered an internship needed to complete that training in Virginia.

Father argued that Child should come live with Father during the school year, instead of Mother, because Child would be able to attend one consistent school in Shelley and have consistent relationships with Father's family that lived in Shelley. Child had attended five different schools while in the care of Mother; however, Mother testified that Child switched schools five times due to Child's enrollment in a gifted and talented program. The only voluntary switch, where Mother changed Child's school, occurred when Mother moved back to Boise from Virginia. The other school changes were a result of the gifted and talented program changing locations, as the school district rotates where the gifted and talented program is located each year. Father had agreed to enroll Child in the gifted and talented program.

When asked what sort of custody arrangement Father wanted, Father stated that the 2013 Custody Order already in place was "not a bad one" and that custody should just be switched so that Father would have custody during the school year, and Mother would have the visitation that Father had previously had. Father stated that if he were given custody of Child during the school year he would get more involved in Child's schooling, as even after Child moved back to Idaho, Father had only been to Child's former and current schools in Boise one time each and did not know who Child's teacher was. Additionally, Father had never attended a parent teacher conference. Mother testified that she takes Child to medical appointments, helps Child with homework, and takes Child to extracurricular activities. Mother had maintained custody of Child during the school year for all of Child's life. Mother also testified that Child has documented separation anxiety when away from Mother.

At trial the magistrate judge asked Mother, "If the order is that [Child]'s going to go and go to school in Shelley, would you stay in Boise or would you go to Virginia or would you move

to Shelley and -- what would you do? What's your spontaneous response to that?" Then the magistrate judge stated, "And nobody is going to hold you to it, because I know you're just shooting from the hip here right now." Mother replied, "I would move to Virginia." Mother's statement that she would return to Virginia regardless of the trial outcome was a main basis for the denial of her motion to reconsider, with the magistrate judge stating Mother had taken one position at trial, and then changed her position to try and change the trial results. Mother later stated she was attempting to ask the magistrate judge for permission to move, rather than stating her firm intention to move. Mother has since declined her opportunity in Virginia and is staying in Boise.

The magistrate judge found there had been a substantial change in circumstances because of Mother's move to Idaho and her plan to move back to Virginia, as well as Father's job loss and reduced income. The magistrate judge determined that the best interests of Child would be served by reversing the existing custody plan and giving Father school year custody of Child. In reaching his decision, the magistrate judge focused on Child's five changes in schools as well as Mother's residential moves, as Mother had moved four to five times during Child's life. The magistrate judge also credited Father for Father's homeownership of his house in Shelley since 2011, Father's family network in Shelley, and Father's ability to pay his bills by working at McDonald's if needed. Mother filed a motion to reconsider and said she was staying in Boise rather than moving to Virginia. The magistrate judge denied the motion to reconsider, reiterating many of the reasons given in its initial order, and noting that Mother was changing her position by deciding not to move to Virginia. Mother timely appealed.

## II.    ISSUES ON APPEAL

1. Whether the magistrate abused its discretion when it modified the parties' existing custody arrangement.
2. Whether either party is entitled to attorney fees on appeal.

## III.    STANDARD OF REVIEW

This is a permissive appeal under [I.A.R.] 12.1, and as such, the Court reviews the magistrate judge's decision without the benefit of a district court appellate decision. A trial court's child custody decision will not be overturned absent an abuse of discretion. A trial court does not abuse its discretion as long as the court "recognizes the issue as one of discretion, acts within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reaches its decision through an exercise of reason." When the trial

4

court's decisions affect children, the best interests of the child is the primary consideration.

*Lamont v. Lamont*, 158 Idaho 353, 356, 347 P.3d 645, 648 (2015) (citations omitted). "An abuse of discretion occurs when the evidence is insufficient to support a magistrate's conclusion that the interests and welfare of the children would be best served by a particular custody award or modification." *Nelson v. Nelson*, 144 Idaho 710, 713, 170 P.3d 375, 378 (2007). When an appellate court reviews the magistrate judge's findings of fact, the appellate court "will not set aside the findings on appeal unless they are clearly erroneous such that they are not based upon substantial and competent evidence." *Id.*

## IV. ANALYSIS

Mother argues the magistrate judge erred in changing primary custody during the school year from Mother to Father. Specifically, Mother argues that there was not a substantial, material change in circumstances because the parties had continued to adhere to the visitation schedule outlined in the 2013 Custody Order for two years after Mother returned to Idaho. Additionally, Mother argues that it is not in Child's best interests to live with Father during the school year. Mother argues that Mother has always been Child's primary caretaker, Child is enrolled in a gifted and talented program in Boise, Child has separation anxiety when away from Mother, and Mother helps Child with schooling and extracurricular activities whereas Father has not been involved in Child's school or activities. Father argues that there has been a substantial, material change in circumstances because he lost his job in the oil fields and because Mother moved back to Idaho. Father asserts that the magistrate judge properly modified custody to give Child to Father during the school year because Child has changed schools five times, and because Mother moved to Virginia, then back to Boise, and wanted to move back to Virginia again. Father also asserts that Mother's moving makes her unstable, and that Child should live with Father in Shelley where she will be near his family.

## A. The magistrate erred in modifying the parties' custody arrangement.

For the reasons discussed below, we reverse the magistrate judge's order modifying the existing custody plan. This Court has long held that in order to modify an existing custody agreement there must be a material, permanent, and substantial change in circumstances that warrants modification of custody for the best interests of the child. *Doe v. Doe (2016-7)*, 161 Idaho 67, 71, 383 P.3d 1237, 1241 (2016); *Rogich v. Rogich*, 78 Idaho 156, 161, 299 P.2d 91, 94 (1956); *Simpson v. Simpson*, 51 Idaho 99, 102, 4 P.2d 345, 346 (1931). The party who wants to "

5

'modify a previously existing custody order must first demonstrate that a material, substantial change in circumstances occurred since the earlier custody order. A court then will determine custody and where the children will reside using the best interests of the child standard' provided in Idaho Code section 32-717." *Lamont*, 158 Idaho at 359, 347 P.3d at 651 (quoting *Suter v. Biggers*, 157 Idaho 542, 546, 337 P.3d 1271, 1275 (2014)). Whether a change is "material" or "substantial" depends on the impact the change has on the child. *Doe (2016-7)*, 161 Idaho at 73, 383 P.3d at 1243 (citing *Evans v. Sayler*, 151 Idaho 223, 226, 254 P.3d 1219, 1222 (2011)).

"The movant in custody modification proceedings has the burden not only of showing the change in circumstances has occurred but that, in light thereof, the best interests of the children require the shifting of custody." *Chislett v. Cox*, 102 Idaho 295, 298, 629 P.2d 691, 694 (1981). The changed-circumstances requirement reflects the policy favoring finality and discouraging relitigation of custody agreements. *Doe (2016-7)*, 161 Idaho at 73, 383 P.3d at 1243. "That policy goal, however, is of secondary importance when compared to the best interest of the child, which is the controlling consideration in all custody proceedings." *Poesy v. Bunney*, 98 Idaho 258, 261, 561 P.2d 400, 403 (1977).

In this case, the magistrate found there had been a material, permanent, and substantial change in circumstances, stating:

> This Court concludes that there has been a material, permanent, and substantial change of circumstances since this Court's last order in this case in April of 2013 because M has moved from Virginia to Idaho, M plans to move back to Virginia in August of 2017, F has lost his job in the oil fields and earns about a third or twenty-five percent of what he earned there, and M has a history and pattern of moving [Child] often and calls into question the stability of [Child] while in M's care and custody.

The magistrate judge correctly found that there had been a material, permanent, and substantial change in circumstances because Father was no longer employed in North Dakota and as such was earning substantially less income and because Mother had moved back to Idaho from Virginia.

However, the magistrate judge erred when it determined that the changed circumstances warranted a change in custody for the best interests of Child. "Idaho Code section 32-717 provides a framework for the trial court in determining the best interests of the children in making a custody decision." *Doe (2016-7)*, 161 Idaho at 73, 383 P.3d at 1243. Section 32-717(1)

6

sets forth a non-exhaustive list of factors to consider when evaluating the best interests of the Child. Those factors are:

> (a) The wishes of the child's parent or parents as to his or her custody;
> (b) The wishes of the child as to his or her custodian;
> (c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
> (d) The child's adjustment to his or her home, school, and community;
> (e) The character and circumstances of all individuals involved;
> (f) The need to promote continuity and stability in the life of the child; and
> (g) Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

I.C. § 32-717(1). But importantly, "[t]he court shall consider all relevant factors," even if they are not enumerated in the above list. *Id.* "[A]n abuse of discretion may also occur where the court overemphasizes one factor . . . thereby similarly failing to support its conclusion that the welfare and interests of a child will be best served by a particular custody award." *Moye v. Moye*, 102 Idaho 170, 172, 627 P.2d 799, 801 (1981). In this case, the magistrate judge did not find sufficient facts nor did it thoroughly analyze or apply the facts of this case to any statutory factor. The magistrate judge's findings of fact read as follows:

> M testified that since the last Petition to Modify and trial in this case in 2013, that M has married and divorced, M has relocated from Virginia back to Boise, Idaho area, in November 2014, M has continued her education and is now working on a degree through Idaho State University through the Meridian, Idaho campus on an Education Specialist Degree (a degree that falls between a Master's Degree and a PhD) which follows M's two Master Degrees in the Educational Psychology Field. M is currently working full time in the Caldwell School District earning $45,000 per year; M is planning to accept an internship back in Virginia with the Fauqier County Schools starting in August of 2017 and will earn $65,000 per year as an intern for one year and M anticipates that the Fauqier County Schools will then hire her on a rolling contract basis for over $100,000 per year and after meeting the rule of 30, M will then retire from the Fauqier County schools and permanently reside in Virginia. M testified that the parties daughter [Child] does well in school and is in a gifted and talented program, that [Child] has changed schools about once each year while in M's care, [Child] is now in 5th grade in Boise area having attended two schools in Boise area since moving there in 2014 in November during the school year. M wants to keep the custody schedule set by the Court in 2013. M has her parents and five siblings living in Boise area and one sister who lives in Virginia Beach, Virginia. M moved back to Boise in November of 2014 because she had health issues arising out of Lyme's disease, but M's health is fine now. M feels that F may have had mental health issue when they were together and that [Child] suffers from separation anxiety when she is away from M because M feels that M is the primary attachment person in [Child]'s life.

F testified that his home base has been Shelley, Idaho most of his adult life, but F has worked in the oil fields in North Dakota earning over $100,000 per year until F lost his job in the oil fields in the spring of 2015. F bought a home in Shelley, Idaho in 2011 and has resided in that same home since. F lives alone but has a large extended family in Shelley where his mother, siblings, cousins, aunts and uncles live. Since losing his job in the oil fields, F has worked as a low voltage electrical appliance installer with his cousin, but in September of 2016 started working seasonally for LP Propane earning $17.50 hour and hopes when the season ends in May that F might be offered full time employment. F filed his petition to modify to get his child support adjust to reflect his current income and to seek greater stability for [Child] who has been moved often by M since the divorce. F testified that he believes that F, M, and [Child] are each in good health physically and emotionally. F testified that when [Child] is with him through the summer and at other times that she is happy, joyous, a pleasure to be around and that [Child] interacts well with F's extended family.

The magistrate judge went on to discuss the best interests of the child factors as follows:

*The wishes of the individual parents:* In this case, M would like the current custody arrangement to stay in place while F would like the current custody arrangement reversed with [Child] to live with F during the school year and M to have the visitation that F has had over the past three plus years.

*The wishes of the children:* In this case, neither party had a child custody evaluation done nor did either party request that the Court interview the child to determine the child's wishes. This Court believes that the child loves each parent and wants to spend considerable time with each parent.

*The interaction and interrelationship of the children with his or her parents and siblings:* In this case, M reports that [Child] does well while in her custody and F reports that [Child] does well while in his custody.

*The children's adjustment to his/her home, school, community:* M testified that [Child] does well with M no matter where M lives nor which school M puts [Child] into. F testified that F feels that [Child] would do better living in his home in Shelley, Idaho and [Child] attending the same school district with the same set of friends for the next seven years.

*The character and circumstances of all individuals involved:* F and M both acknowledge the other is a good, loving, caring parent.

*The need to promote continuity and stability in the life of the child:* M contends that she is providing stability in the life of [Child] even though M moves often and [Child] changes schools often. F contends that F does not move and that [Child] would be more stable attending school in Shelley, Idaho from [Child]'s home.

*Domestic violence if any:* No testimony of domestic abuse was received by the Court.

*The disability of any party to the action and related adaptive equipment and supportive services:* No evidence of either parent or of the child being disabled was presented to the Court.

Best Interest of [Child]: In an exercise of discretion, the Court concludes that [Child]'s best interest will be served by reversing the current custody order so that [Child] lives primarily with F during the school year and with M during the summer and additional visits with M during the school year because M has moved frequently over the past years and plans another major move in 2017 and after her internship of one year there is the possibility of yet another move, [Child] has changed schools almost every year over the past five years while being in M's custody and changed in the middle of the year in 2014, in contrast F has had and maintains the same home in Shelley since 2011, F testified that his finances are such that he could survive and meet his monthly expenses working at McDonald's, if necessary, and F has a close extended family living in Shelly or [sic] to help him with parenting [Child].

The purported findings of fact are not sufficient findings of fact. "A finding of fact is a determination of a fact supported by the evidence in the record." *Crown Point Dev., Inc. v. City of Sun Valley*, 144 Idaho 72, 77, 156 P.3d 573, 578 (2007) (citing BLACK'S LAW DICTIONARY 284 (2d Pocket ed. 2001)). A statement that "merely recite[s] portions of the record which could be used in support of a finding" is not a finding of fact. *Crown Point Dev., Inc.*, 144 Idaho at 77, 156 P.3d at 578. Here, the magistrate judge merely recited portions of the record, restating what Mother and Father had testified to. Then, despite the lack of application of the statutory factors to the present case, the magistrate judge determined Child's best interests would be served by modifying the existing custody plan, and giving Father custody during the school year. The magistrate judge's decision to modify custody was in error.

This Court's prior decisions make clear that the parent seeking the modification has the burden of showing not only that there has been a substantial, material, and permanent change in circumstances, but also that because of the change in circumstances, the child's best interests now require a change in custody. *Chislett*, 102 Idaho at 298, 629 P.2d at 694. In *Strain v. Strain*, the only evidence presented supporting modification of the custody agreement was the father and the child's desire that custody be transferred to the father. 95 Idaho 904, 905, 523 P.2d 36, 37 (1974). This Court concluded that this desire by father and child was not a change in circumstances that warranted modifying the existing custody plan, and thus the magistrate judge had abused its discretion in modifying the custody agreement. *Id.* at 906, 523 P.2d at 38. In contrast, in *Brownson v. Allen*, there was a substantial and material change in circumstances warranting a change in custody back to the father when a child changed his mind about which

parent he wanted to live with, the child's academic performance suffered while living with the mother, and the child was anxious while staying with the mother. 134 Idaho 60, 64, 995 P.2d 830, 834 (2000). In *Lamont*, this Court upheld the magistrate judge's decision that it was in the best interests of the children to stay with their mother, even though the mother was relocating for employment. 158 Idaho at 356–57, 347 P.3d at 648–49. In upholding that it was in the best interests of the children to move with their mother, this Court noted the mother's history of being the primary caregiver and the better educational opportunities in the new school district. *Id.*

Additionally, the court must consider all relevant factors when deciding what custody award is in the best interests of the child. I.C. § 32-717(1). In *Moye*, in finding the trial court abused its discretion when it modified custody, this Court stated, "[T]he court's apparent overemphasis of but one consideration, that being the mother's physical condition, convinces this Court that all other relevant factors impacting upon the best interests of the children were not duly considered or, if they were, it was not so reflected upon the record." 102 Idaho at 172, 627 P.2d at 801.

The present case is similar to *Strain*, *Lamont*, and *Moye*. In *Strain*, the only evidence presented by the moving party was the father and child's desire that custody be changed. Here, the only evidence presented by the moving party, Father, aside from his desire that Child live with him, is an unsubstantiated claim that Child's interests would be better served by living near cousins in Shelley. This case is unlike *Brownson* where the child's academic performance suffered and the child was anxious while staying with his mother, because here, Child has thrived in school while in Mother's care and has separation anxiety when *away* from Mother. No evidence or testimony was offered showing any sort of detriment to Child while in Mother's care. Like in *Lamont*, where the mother had historically been the primary caretaker, here, Mother has historically been the primary caretaker of Child. Also like in *Lamont*, where there were better school opportunities in Mother's location, in this case, Child, who is academically gifted, has better educational opportunities in Boise as opposed to Shelley, as Child is enrolled in a gifted and talented program in Boise. Additionally, the concerns present in *Moye*, where the court focused on a single factor, are also present here. In this case, the magistrate judge focused on Mother's "instability" without making any finding that Mother's four residential moves in the last ten years had any impact on Child, and unrebutted testimony showed that Child's school

changes were due to her enrollment in the gifted and talented program, and were in Child's educational best interests.

The dissent states that this Court is "simply consider[ing] the same facts as did the magistrate and reach[ing] a different conclusion." While we are constrained by the record before us, we are not simply considering the same facts as the magistrate judge and reaching a different conclusion. Such is not possible when the magistrate judge did not state which facts it considered when it decided to modify custody. As discussed above, the magistrate judge's "findings of fact" consist of an objective recitation of Mother and Father's testimony. Then, without engaging in a thorough analysis of any of the best interest of the child factors, the magistrate judge determined it was in Child's best interest to modify custody, apparently relying on nothing more than an intuition that custody should be modified. The dissent cites to *Prescott v. Prescott* to support its contention that this Court gives "special deference [to] the findings of fact of the court below [because of the] recognition of the special opportunity of the lower court to assess the credibility of the witnesses in the proceeding there." 97 Idaho 257, 261, 542 P.2d 1176, 1180 (1975). However, such deference is given only when the magistrate judge's findings are based on sufficient, competent evidence. *Id.* In this case, the findings are insufficient as they are mere recitations of each party's testimony. Moreover, there does not appear to be any evidence in the record to support the magistrate judge's decision to modify custody. Thus, even though the magistrate judge has "broad discretion" in child custody determinations, *see, e.g.*, *Brashear v. Brashear*, 71 Idaho 158, 163, 228 P.2d 243, 246 (1951), we do not give up our oversight and automatically defer to the magistrate judge's determination. Rather, we review the magistrate judge's decision for an abuse of discretion, which requires the magistrate judge to act within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reach its decision through an exercise of reason. *Lamont*, 158 Idaho at 356, 347 P.3d at 648. Here, because we are unable to find any facts in the record supporting the magistrate judge's decision to modify custody in the best interests of Child, we conclude that the magistrate judge erred.

In sum, Father failed to show that a modification of custody was in Child's best interests. The record shows that Mother moved to Virginia initially in compliance with a valid court order, and then moved back to Boise in 2014 after consulting with Father. Once Mother was back in Boise, Father did not spend more time with Child, as he wanted the 2013 Custody Order to

continue to govern the visitation plan. Unrebutted testimony shows that the Child's changes in schools were in Child's best educational interests as part of Child's gifted and talented program, and that Father consented to Child's enrollment in the program. Father did not show that Shelley schools would offer the appropriate schooling needed for Child. Additionally, there was no evidence in the record that Mother's moves had any impact on Child, or that Mother was doing anything contrary to Child's best interests. Father testified that custody should be modified to give him custody of Child during the school year because Father wants Child to be close to his family in Shelley. However, Father wanting Child to be close to his family is not the test for custody modification. Rather, Father, as the moving party, had the burden of showing it was in Child's best interests to modify the existing custody plan. *Chislett*, 102 Idaho at 298, 629 P.2d at 694. Father offered no evidence or testimony supporting why Child would be better served by living with Father in Shelley, rather than staying with Mother in Boise, aside from an unsubstantiated claim that living in Shelley close to Child's cousins was in Child's best interests. There is no evidence that Mother's four moves had any impact or caused any problems with Child, or that Mother was acting in any way contrary to Child's best interests.

Because Father, as the moving party, failed to carry his burden of showing a material, permanent, and substantial change in circumstances that warranted a change in custody in the best interests of Child, the magistrate judge's modification of custody was an abuse of discretion. Accordingly, we reverse the magistrate judge's modification of custody. Because we reverse the magistrate judge's modification of custody, we do not reach the issue of whether Mother's motion to reconsider was properly denied.

**B.      Neither party is entitled to attorney fees on appeal.**

Both Mother and Father request attorney fees on appeal pursuant to Idaho Code section 12-121. This Court, in any civil action, may award reasonable attorney fees to the prevailing party. I.C. § 12-121; *Doe (2016-7)*, 161 Idaho at 79, 383 P.3d at 1249. "This Court has held that attorney fees can be awarded on appeal under Idaho Code section 12-121 'only if the appeal was brought or defended frivolously, unreasonably, or without foundation.' " *Id.* (citation omitted). Here, we cannot conclude that either party's conduct in this appeal was frivolous, unreasonable, or without foundation. Therefore, neither party is entitled to attorney fees on appeal.

## V. CONCLUSION

We reverse the magistrate judge's decision that changed school year custody from Mother to Father. We remand to the magistrate court to reinstate the custody agreement from the 2013 Custody Order, which gave Mother custody during the school year, and Father custody during school breaks and holidays. We decline to award attorney fees to either party on appeal. Costs to Mother.

Justices JONES, BRODY and J. PICKETT, Pro tem, **CONCUR.**

HORTON, J., concurring in part and dissenting in part.

I join in the Court's conclusion that Father demonstrated a substantial, material and permanent change in circumstances. However, I respectfully dissent from the Court's determination that the magistrate abused its discretion when it determined that modification of the custody arrangement was in Child's best interests. This Court has traditionally recognized that trial courts have "broad discretion" in child custody determinations. *See, e.g., Brashear v. Brashear*, 71 Idaho 158, 163, 228 P.2d 243, 246 (1951). We have afforded "special deference" to best interests findings in "recognition of the special opportunity of the lower court to assess the credibility of the witnesses in the proceeding there." *Prescott v. Prescott*, 97 Idaho 257, 261, 542 P.2d 1176, 1180 (1975). In my view, this Court has simply considered the same facts as did the magistrate and reached a different conclusion. If the standard of review was de novo review of the magistrate's decision, I would not hesitate to join with the Court. I do not, however, believe that Mother has demonstrated that the magistrate court abused its discretion when it modified the custody arrangement.