# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46934

<table>
<tr><td>JENNIFER JO STEFFA, nka JENNIFER HOLT,<br><br>    Petitioner-Respondent-Cross Appellant,<br><br>v.<br><br>MATTHEW J. STEFFA,<br><br>    Respondent-Appellant-Cross Respondent.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Filed: November 19, 2019<br><br>Karel A. Lehrman, Clerk<br><br>THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY</td></tr>
</table>

Appeal from the Magistrate Division of the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Scott H. Hansen, Magistrate.

Order modifying child custody, <u>reversed</u>; judgment, <u>vacated</u>; and <u>case remanded</u>.

Smith Woolf Anderson & Wilkinson, PLLC; Aaron J. Woolf, Idaho Falls, for appellant.

Swafford Law Office; Trevor Castleton, Idaho Falls, for respondent.

---

GRATTON, Chief Judge

This expedited, permissive appeal presents a child custody dispute. Matthew J. Steffa appeals from the magistrate's judgment which modified the previous child custody plan outlined in the 2016 judgment and decree of divorce between Matthew and the minor child's (Child) mother, Jennifer Jo Steffa. Matthew argues that the magistrate erred in modifying Child's custody schedule. For the reasons set forth below, we reverse the order of the magistrate modifying custody and support, vacate the judgment, and remand the case to the magistrate court.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Matthew and Jennifer are the parents of one minor child. Matthew and Jennifer were divorced in July of 2016. Following separation and as pertinent to the issues on appeal, Jennifer moved from the family home in Blackfoot to Idaho Falls to live with her girlfriend/fiancé (Bonnie). At trial, Jennifer sought shared 50/50 custody of Child and testified that she would be willing to move back to Blackfoot to accomplish shared custody. In addition, Child testified that she wanted to live with Jennifer and visit Matthew on the weekends and Wednesdays. After trial, the magistrate entered the divorce decree granting Matthew primary custody of Child during the school year with Jennifer to have parenting time in week one on Thursday evenings and in week two from Friday evening to Sunday evening. The parties would split custody on a one-week rotation during the summer months. In addition, the divorce decree ordered that Jennifer pay Matthew $245 per month in child support. Jennifer filed a motion to reconsider requesting 50/50 shared physical custody. Again, Jennifer argued that she was willing to move back to Blackfoot to accomplish the shared custody arrangement. The magistrate denied the motion for reconsideration.

In September 2017, Jennifer filed a petition to modify child custody. Jennifer requested that the magistrate modify the custody order to give her primary physical custody during the school year and an even split on a one-week rotation during the summer. In the alternative, Jennifer sought shared physical custody. In addition, Jennifer requested that child support be set in accordance with the Idaho Child Support Guidelines. Matthew filed a motion to dismiss for lack of a material and substantial change in circumstances. The magistrate denied Matthew's motion and the issue proceeded to trial. After the first two days of trial, Matthew filed, among other motions, a motion to continue the final day of trial from August 15, 2018. On August 6, 2018, the magistrate held a hearing to consider Matthew's motions. At the hearing, the magistrate granted Matthew's motion to continue trial and set the final day of trial for January 30, 2019. In addition, the magistrate entered a temporary custody order requiring the parties to continue the summer custody schedule until the final day of trial. On September 5, 2019, the magistrate entered a written order reflecting its August 6 rulings.

On February 7, 2019, following the conclusion of trial, the magistrate issued an order awarding the parties shared 50/50 custody. The magistrate also ordered Matthew to pay Jennifer

$847 per month in child support beginning in February 2019. Thereafter, on March 5, 2019, the magistrate entered its final judgment reflecting the child custody and support modifications. Subsequently, Matthew filed a motion for permission to appeal to the Idaho Supreme Court and the motion was granted. Matthew timely appeals. In addition, Jennifer cross-appeals from the magistrate's judgment.

## II.

## STANDARD OF REVIEW

This case is on a direct permissive appeal from a decision of a magistrate affecting the custody of a minor child; therefore, this Court is directly reviewing the magistrate's decision without the benefit of a district court appellate decision. *Roberts v. Roberts*, 138 Idaho 401, 403, 64 P.3d 327, 329 (2003). In custody disputes, the awarding of custody of minor children rests within the discretion of the trial court whose decision will not be overturned on appeal absent an abuse of discretion. *Koester v. Koester*, 99 Idaho 654, 657, 586 P.2d 1370, 1373 (1978). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). When the trial court's decisions affect children, the best interest of the child is the primary consideration. *Roberts*, 138 Idaho at 403-04, 64 P.3d at 329-30.

"An abuse of discretion occurs when the evidence is insufficient to support a magistrate's conclusion that the interests and welfare of the children would be best served by a particular custody award or modification." *Nelson v. Nelson*, 144 Idaho 710, 713, 170 P.3d 375, 378 (2007). When reviewing the magistrate's findings of fact, this Court "will not set aside the findings on appeal unless they are clearly erroneous such that they are not based upon substantial and competent evidence." *Id.* Even if the evidence is conflicting, findings of fact based on substantial evidence will not be overturned on appeal. *Id.*

## III.

## ANALYSIS

Matthew argues that (1) the magistrate erred in changing the temporary custody schedule; (2) the magistrate erred in changing the permanent physical custody schedule; and (3) he is

3

entitled to attorney fees on appeal. On cross-appeal, Jennifer argues that (1) the magistrate erred by failing to award child support retroactively to the date that Jennifer filed her petition for custody modification; and (2) she is entitled to attorney fees. We address each argument in turn.

## A. Temporary Change in Custody

Matthew argues that the magistrate erred in temporarily changing the custody agreement at the August 6, 2018, hearing without a motion by either party. In response, Jennifer argues that this issue is moot. We agree that the issue is moot. This Court does not decide moot issues. *Hoagland v. Ada County*, 154 Idaho 900, 912, 303 P.3d 587, 599 (2013).

The temporary custody order entered on September 5, 2018, states that "the parties shall rotate custody of the minor child on a week on week off basis until trial in this matter which is scheduled for January 30, 2019." Since then, the magistrate entered its February 7, 2019, permanent custody order and its final judgment, which will effectively replace the temporary order. If Matthew objected to the temporary order, the time to appeal that issue was before the order was superseded. Because the order was superseded by the trial court's February 7, 2019, decision and the subsequent March 5, 2019, final judgment, this issue is moot. *See Suter v. Biggers*, 157 Idaho 542, 550-51, 337 P.3d 1271, 1279-80 (2014).

## B. Change in Physical Custody

Matthew argues that the magistrate abused its discretion by changing the permanent physical custody order. Specifically, Matthew argues that the magistrate erred by (1) finding a material and substantial change in circumstances to warrant a change in Child's physical custody; (2) failing to properly consider the Idaho Code § 32-717 factors; and (3) rewarding Jennifer with physical custody despite the magistrate's finding that Jennifer was alienating Child from Matthew. First, we address whether there was a material and substantial change in circumstances that warranted modification of the custody arrangement.

This Court has long held that in order to modify an existing custody agreement there must be a material, permanent, and substantial change in circumstances that warrants modification of custody for the best interest of the child. *Doe v. Doe (2016-7)*, 161 Idaho 67, 71, 383 P.3d 1237, 1241 (2016)*; Rogich v. Rogich*, 78 Idaho 156, 161, 299 P.2d 91, 94 (1956). The party who wants to "'modify a previously existing custody order must first demonstrate that a material, substantial change in circumstances occurred since the earlier custody order. A court then will determine custody and where the children will reside using the best interests of the

4

child standard' provided in Idaho Code section 32-717." *Lamont v. Lamont*, 158 Idaho 353, 359, 347 P.3d 645, 651 (2015) (quoting *Suter*, 157 Idaho at 546, 337 P.3d at 1275). Whether a change is "material" or "substantial" depends on the impact the change has on the child. *Doe (2016-7)*, 161 Idaho at 73, 383 P.3d at 1243.

"The movant in custody modification proceedings has the burden not only of showing the change in circumstances has occurred but that, in light thereof, the best interests of the children require shifting of custody." *Chislett v. Cox*, 102 Idaho 295, 298, 629 P.2d 691, 694 (1981). The changed-circumstances requirement reflects the policy favoring finality and discouraging re-litigation of custody agreements. *Doe (2016-7)*, 161 Idaho at 73, 383 P.3d at 1243. "That policy goal, however, is of secondary importance when compared to the best interest of the child, which is the controlling consideration in all custody proceedings." *Posey v. Bunney*, 98 Idaho 258, 261, 561 P.2d 400, 403 (1977).

### 1. Magistrate's express findings of substantial and material change in circumstances

In this case, the magistrate expressly found that the combination of the following factors amounted to a permanent, material, and substantial change of circumstances: (1) Jennifer's move from Idaho Falls to Blackfoot; (2) the Child's wishes; and (3) Jennifer's remarriage. Specifically, the magistrate stated: "The [c]ourt concludes . . . that there has been a change in circumstances because Jen has moved from Idaho Falls to Blackfoot to be closer to [Child], [Child] is more clear and adamant about wanting more time with Jen, and Jen has remarried since the divorce."[1] Based on the magistrate's conclusions, Matthew argues that the magistrate failed to determine whether the change in circumstances were in fact material and substantial because the magistrate failed to determine how these changes affected Child. Matthew claims that the facts addressed by the magistrate were not material, substantial, and permanent changes in circumstance which would indicate that a modification would be in the best interest of Child. We agree.

We conclude that the magistrate abused its discretion by altering the original custody schedule because the magistrate did not make any findings to support its conclusion that the three changes listed above constituted a material and substantial change in circumstance. As set forth above, whether there has been a material and substantial change in circumstances is

---

[1] While the magistrate made certain factual findings and cited to other evidence, no other factors were expressly identified as changed circumstances.

dependent upon the impact of the changes on the children. *Doe (2016-7)*, 161 Idaho at 73, 383 P.3d at 1243. In *Doe (2016-7)*, the Idaho Supreme Court explained "the court must look not only for changes of condition or circumstances which are material, permanent and substantial, but also must thoroughly explore the ramifications, vis-à-vis the best interest of the child, of any change which is evident." *Id*. We do not find any support for the magistrate's determination in the record before us.

First, the magistrate's determination that Jennifer's move was a factor that contributed to a change in circumstances is not supported by the magistrate's findings. Jennifer lived in Idaho Falls at the time of the divorce proceedings. Prior to seeking modification, Jennifer had relocated to Blackfoot. The magistrate made mention of Jennifer's move from Idaho Falls to Blackfoot two times in its order: (1) "Since the divorce on July 15, 2016, Jen has moved to Blackfoot, Idaho from Idaho Falls and bought a house in [the] Blackfoot area;" and (2) "Jen lives with her longtime girlfriend and companion Bonnie []--their home in Blackfoot is deeded in both their names . . . ." In discussing the move, the magistrate did not analyze or make any findings regarding the ramifications of the move on Child.[2] In addition, the magistrate was aware, before entering the initial divorce decree and custody arrangement that Jennifer was willing to move from Idaho Falls to Blackfoot if the magistrate were to award the parties shared custody. Regardless of Jennifer's promises to move, the magistrate chose not to award the parties 50/50 custody in the divorce decree. Apparently, the magistrate did not feel that any such move would change the magistrate's custody decision. Nonetheless, in the modification proceedings, the magistrate relied upon the move to find a substantial change in circumstances but failed to support its conclusion or analyze how the move impacted Child or her best interest.

Second, the magistrate's determination that Child's wishes were a factor that contributed to a change in circumstances is not supported by the magistrate's findings. Prior to Jennifer's motion for modification, and as outlined in the divorce decree, Child wished to have more time with Jennifer. During the modification proceedings, the magistrate found that one of the changes

---

[2] Matthew cites to *Doe v. Doe (2016-7)*, 161 Idaho 67, 71 383 P.3d 1237, 1241 (2016), and argues that while it is true that Jennifer moved from Idaho Falls to Blackfoot, it is clear under Idaho case law that a move of thirty miles is not sufficient to establish a material and substantial change in circumstances. While such a move is not, under *Doe*, by itself a material and substantial change, it could be; however, the magistrate made no findings as to how the move affected the child.

that warranted a modification in custody was that "[Child] is more clear and adamant about wanting more time with Jen . . . ." In relation to that conclusion, the magistrate identified the following findings regarding Child's wishes:

(1) Since the divorce on July 15, 2016 . . . [Child] is telling the child interviewer [] that [Child] wishes to spend more time with Jen and less time with Matt . . . .

(2) The Court finds . . . that Jen wants a custody change and is encouraging [Child] to be discontented with the current custody arrangement; and [Child] is discontented with the current custody arrangement and wants to spend more time with Jen and is saying and doing things that [Child] feels will help [Child] achieve a change in the custody arrangement so that [Child] can spend more time in Jen's care.

(3) On the issue of [Child]'s wishes: Ms. Sullivan [Brief Focus Assessment evaluator] reported that [Child] wants to live primarily with Jen and [Child] told Ms. Sullivan that Matt drinks, acts weird when [Child] has friends around, Matt is involved in everything [Child] does such as girl scouts and school, that Matt does not tell Jen about [Child]'s events, and that Matt says bad things about Jen.

(4) On this issue of alienation, Ms. Sullivan reported that [Child] has been influenced by Jen and Jen's [spouse] such as Bonnie telling [Child] that Matt is doing things that are illegal; during the past few months (50-50 custody), [Child]'s appearance has had drastic changes, school performance and quality of friends declined, and [Child] has engaged in negative behavior; [Child] informed a prior therapist that [Child] has done whatever [Child] could to try and get Matt in trouble so [Child] could live with Jen.

(5) On the issue of mental health: Ms. Sullivan reported that . . . [Child] is not developing positively, and it seems she continues to be put in the middle by [Jennifer]. Often time[]s children will choose to be with the parent who continually engages in and/or instigates the high conflict in order to end the conflict.

(6) [Child] states that she does not love Matt, does not want to see him, and wants nothing to do with Matt; however, after making these statements to the Court on day two of the trial, [Child] went on trips with Matt and friends and others and [Child] seems perfectly happy about being with Matt.

(7) The Court finds that [Child] is adversely impacted by the high level of conflict between Matt and Jen and that each of them try to influence [Child] to have a negative opinion of the other parent.

(8) [T]he Court finds that [Child] is trying to please each parent and do what [Child] thinks that a parent wants her to like and do.

(9) At the time of the first two days of trial on Jen's Petition to Modify in May and June of 2018, [Child] had run away from home, and called the police, had made secret recordings of conversations between Matt and [Child], had accused Matt of drinking and driving and acting poorly in front of [Child]'s friends at Matt's house; all of these actions by [Child] were acknowledged by [Child] to have been done in an effort to achieve [Child]'s stated goal of getting

7

away from Matt and never having to see or be with him again. In the BFA, the evaluator wrote: "Often time[]s children will choose to be with the parent who continually engages in and/or instigated the high conflict in order to end the conflict." The Court finds that Jen is working to influence [Child] that Matt is not trustworthy, loveable, or caring, in short is not a good parent.

(10) [Child] has clearly stated that she wants more time with Jen, but the Court can't determine for certain if that is because [Child] wants to lower the conflict level by aliening [sic] herself with the parent who is creating the conflict (aligning with the alienating parent) or if [Child] has unarticulated legitimate reasons for wanting more time with Jen. The Court finds that even though [Child] has stated she does not want to see Matt or live with him, [Child] is still doing well and is reasonably content while staying with Matt one week and then one week with Jen.

(11) [Child] reports that she does not want to see Matt but the court finds that this is caused by Jen's alienating behaviors.

(12) The BFA evaluator's opinion that Jen is alienating [Child] from Matt is of concern to the Court. [Child]'s formal, but soft position of not wanting to see Matt is of concern to the Court and the Court believes that [Child]'s position is promoted and influenced by Jen and her wife.

As an initial matter, Child articulated her wishes to spend more time with Jennifer during the divorce proceedings. Therefore, Child's continued wishes or her "more clear and adamant" wishes to spend more time with Jennifer do not amount to a material and substantial change in circumstances absent findings or analysis to support the magistrate's conclusion. In addition, the magistrate found that Child's statements during the modification proceedings regarding her wishes to live with Jennifer were the product of manipulation and alienating influence by Jennifer. The magistrate made numerous findings that Child's wishes were being influenced, in particular by Jennifer. These findings do not give credence to the magistrate's reliance on Child's wishes. To the contrary, the findings cut against the magistrate's conclusion. Thus, the magistrate's reliance on the Child's wishes in concluding that a material and substantial change in circumstances occurred was misplaced. The magistrate's findings do not support its conclusion that Child's wishes constituted a substantial change in circumstances.

Third, the magistrate's determination that Jennifer's remarriage was a factor that contributed to a change in circumstance is not supported by the magistrate's findings. During the divorce trial, Jennifer was living with Bonnie in Idaho Falls. The magistrate outlined in the divorce decree that Bonnie was Jennifer's "girlfriend/fiancée." During the modification proceedings, Jennifer and Bonnie were married. The only areas in which the magistrate makes mention of Jennifer's marriage or relationship with Bonnie is as follows: (1) "Jen lives with her

8

longtime girlfriend and companion Bonnie [] --their home in Blackfoot is deeded in both their names . . . ;" and (2) "the Court believes that [Child]'s position is promoted and influenced by Jen and her wife." As with Jennifer's relocation and Child's wishes, the magistrate erred in failing to analyze or make findings regarding the marriage's ramifications on Child.

### 2. Jennifer's claim of material and substantial change in circumstances

Jennifer argues that various statements that the magistrate made in its memorandum decision and order, outside the three express findings listed above, support a material and substantial change in circumstances. First, we note that in *Searle v. Searle*, 162 Idaho 839, 846, 405 P.3d 1180, 1187 (2017), the Idaho Supreme Court explained that "a finding of fact is a determination of a fact supported by the evidence in the record. A statement that 'merely recites portions of the record which could be used in support of a finding' is not a finding of fact." *Id.* (quoting *Crown Point Dev., Inc. v. City of Sun Valley*, 44 Idaho 72, 77, 156 P.3d 573, 578 (2007)). In this case, although the magistrate issued a nine-page memorandum decision and order outlining the modification proceedings, a large part of the content found in the order is simply a recitation of testimony from the modification proceedings and does not amount to findings of fact. To the extent that the magistrate did make findings which could support a change in circumstances beyond the express changes discussed above, we conclude that the findings do not support a material and substantial change in circumstances which would warrant modification benefiting Jennifer.

Examples of the pertinent findings are as follows:

(1) The Court finds that Matt is currently stable and in a position to parent [Child] especially with the help and assistance of [Matt's partner].
(2) The Court concludes that the counseling has helped [Child] through a difficult time, that Matt has been the parent to provide and facilitate the counseling . . . .
(3) The Court finds that [] Dr. Allen [] find[s] something about Jen that caused Dr. Allen to recommend that Jen have limited time with [Child] . . . .
(4) The Court finds that Jen is working to influence [Child] that Matt is not trustworthy, loveable, or caring, in short is not a good parent.

Neither these findings, the findings listed in the previous discussion, nor the remaining findings in the magistrate's order support the magistrate's determination that a change in circumstances warranted a modification to Child's custody. The magistrate's findings are contrary to the magistrate's conclusion that a change in circumstance warranted increased custody for Jennifer. It is true that "What may appear by itself to be a small and insignificant change in circumstances

9

may have significant effects insofar as children are concerned." *Posey*, 98 Idaho at 262, 561 P.2d at 404. However, in this case, the magistrate failed to analyze the change's effects on Child. Based on the absence of findings to support the magistrate's conclusions, this Court is simply unable to conclude that there was a permanent, material, and substantial change in circumstances that warranted the change of the original custody agreement.

### 3. Best interest of the child

Matthew argues that the magistrate failed to properly consider the Idaho Code § 32-717 factors when determining that granting each parent 50/50 custody was in the best interest of Child. Although we need not address this argument because we conclude that there was no change in circumstances to warrant modification, we will address the magistrate's determination that it was in Child's best interest to grant Jennifer's petition for modification.

After the magistrate determines that a material, substantial change in circumstances occurred since the earlier custody order, a magistrate then will determine custody and where the children will reside using the best interest of the child standard provided in I.C. § 32-717. *Searle*, 162 Idaho at 843, 405 P.3d at 1184. Idaho Code § 32-717(1) sets forth a non-exhaustive list of factors to consider when evaluating the best interest of the child. Those factors are:

> (a) The wishes of the child's parent or parents as to his or her custody;
> (b) The wishes of the child as to his or her custodian;
> (c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
> (d) The child's adjustment to his or her home, school, and community;
> (e) The character and circumstances of all individuals involved;
> (f) The need to promote continuity and stability in the life of the child; and
> (g) Domestic Violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

In this case, the magistrate

> concludes that limiting either parent's access to [Child] will only further foster fermentation of toxic feelings and actions of these parties toward each other; the Court concludes that the best change to bring some level of stability to this family is for equal access to [Child] by both parents for equal amounts of time even though good reasons exist to try and limit either or both parents parenting time with [Child]. [Child]'s best interest will be served and achieved by each parent having equal access to [Child]; each parent having equal opportunity to influence [Child] in a positive way according to the morals and values of each parent.

However, the magistrate made the following finding:

> 26. This Court has listened carefully to find in this case facts that could be relied upon to prove that granting Jen's Petition to Modify to grant Jen more time with

[Child] would be in [Child]'s best interest; for example, that [Child] would do better in school, that [Child] would be in a more stable environment, that [Child] would receive counseling or treatment of some kind that she does not already receive, that by Jen having more time with [Child] [it] would lower the level of conflict between Matt and Jen; Jen has not provided any such evidence.

This Court simply cannot square the magistrate's best interest of the child conclusion with the finding listed above. Finding 26, as well as the remaining findings (many of which are included in the previous discussion), do not support the magistrate's conclusion that it was in Child's best interest to spend more time with Jennifer.

## C.     Retroactive Child Support

In her cross-appeal, Jennifer argues that the magistrate erred in failing to make Matthew's child support payments due to her retroactively. Jennifer contends that, rather than modifying the child support payment beginning February 1, 2019, the magistrate should have ordered retroactive payments back to September 1, 2018, when Jennifer was initially awarded 50/50 custody of Child. First, a magistrate has "the ability to retroactively modify child support provisions" and the magistrate's decision to modify child support is reviewed for an abuse of discretion. *Rohr v. Rohr*, 128 Idaho 137, 142, 911 P.2d 133, 138 (1996). Jennifer has not shown that the district court abused its discretion in selecting February 1, 2019, as the date for support modification. *Id.* at 141, 911 P.2d at 137. Second, because we conclude that the magistrate erred in modifying custody and we vacate the magistrate's judgment, we need not consider Jennifer's argument.

## D.     Attorney Fees and Costs

Both parties seek attorney fees on appeal pursuant to I.C. § 12-121. Idaho Code § 12-121 provides that a court in any civil action may award reasonable attorney fees to the prevailing party. This Court has held that attorney fees can be awarded on appeal under I.C. § 12-121 "only if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Doe v. Doe*, 149 Idaho 669, 675, 239 P.3d 774, 780 (2010). We cannot conclude that either party's conduct in this appeal was frivolous, unreasonable, or without foundation. However, the costs on appeal are awarded to Matthew. *See* Idaho Appellate Rule 40.

## IV.

## CONCLUSION

We reverse the magistrate's order modifying custody and child support. We vacate the magistrate's judgment and remand the case to the magistrate to reinstate the custody and child

11

support obligations outlined in the judgment entered August 10, 2016, *nunc pro tunc* July 15, 2016. We decline to award attorney fees to either party on appeal. Costs are awarded to Matthew.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.